Larry Reed HOUG, Respondent,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Appellant,

Bethel Lutheran Church in Lester
Prairie, Minnesota,
Respondent,

Evangelical Lutheran Church in America,
f/k/a the American Lutheran Church,
Defendant,

M.C., Respondent.

No. C9–93–1101.

Court of Appeals of Minnesota.

Dec. 21, 1993.

Review Denied Feb. 24, 1994.

Michael Berens, Kelly & Berens, Minneapolis, for Larry Reed Houg.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, Minneapolis, for State Farm Fire and Cas. Co.

Gerald L. Maschka, Farrish, Johnson & Maschka, Mankato, for Bethel Lutheran Church in Lester Prairie, Minnesota.

Considered and decided by RANDALL, P.J., and DAVIES and FLEMING *, JJ.

**OPINION**

RANDALL, Judge.

Respondent M.C., a parishioner at Bethel Lutheran Church in Lester Prairie, Minnesota, sued both respondent Bethel Lutheran Church and its minister, respondent Reverend Larry Houg. As to Houg, M.C. alleged that he sexually abused and sexually exploited her while she was seeing him for marital counseling. As to Bethel Lutheran Church, M.C. alleged theories of respondeat superior, negligent employment, and negligent supervision.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Bethel Lutheran Church was insured under a church policy by appellant State Farm Fire and Casualty Company. On a motion for summary judgment, the district court held State Farm must indemnify Bethel Lutheran Church. We reverse and remand.

## FACTS

M.C. and her husband joined Bethel Lutheran Church (Bethel), where Houg was the pastor, in February 1984. M.C. became an active member of the church. One year later, M.C. began seeing Houg for family, marital, emotional, and spiritual counseling. M.C. claimed that Houg, as her minister, counselor, and therapist, set out on a course of conduct designed to entice and seduce her into sexual relations. M.C. asserted Houg succeeded because of the disparity in the relationship, M.C.'s emotional vulnerability and dependency, and Houg's deception. M.C. claims that because of her experience with Houg, she suffered from a rapid heart beat, anxiety, dental problems, stomach problems, and ulcer-like symptoms.

State Farm had issued a church insurance policy covering Bethel which included comprehensive business liability coverage and clergy professional liability coverage. The comprehensive business liability coverage portion of the policy provided:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies.

Bodily injury is defined by the policy to mean:

> bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

This portion of State Farm's policy contained a specific exclusion:

> Under Coverage L, this policy does not apply:
>
> \* \* \* \* \* \*
>
> 8. to bodily injury or property damage due to rendering of or failure to render

any professional service or treatments \* \* \*.

To provide liability coverage for its ministers for ministerial work, the coverage specifically excluded by Coverage L, Bethel purchased optional clergy professional liability coverage. The optional coverage provides:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of acts, errors or omissions of the insured arising out of counseling activities or counseling activities of others for which the insured is liable.

Counseling activities is defined by the policy to mean:

> consultations or communications between an insured and another person wherein the insured offers advice or guidance with regard to conduct or proposed conduct. Counseling Activities shall be limited solely to those conducted while the person insured is acting within the scope of that person's employment by the named insured.

The optional coverage, like Coverage L, contained a specific exclusion:

> *This coverage does not apply:*
>
> \* \* \* \* \* \*
>
> 8. to liability resulting from any actual or alleged conduct of a sexual nature.

(Emphasis added.)

Houg tendered the defense to State Farm under the policy. State Farm asserted it had no duty to defend or indemnify Houg. State Farm argues that without the optional coverage, it would have no duty to defend nor indemnify for ministerial services, regardless of the claimed conduct; and even with the optional clergy coverage, since there is a specific exclusion for liability resulting from "conduct of a sexual nature," their insurance policy is entirely out of the picture. Houg brought a declaratory judgment action asking for a policy interpretation that would provide coverage. Bethel crossclaimed against State Farm for defense of M.C.'s claims against it. Houg and State Farm both moved for summary judgment. As to Houg, the district court held that State Farm

had no duty to defend or indemnify and granted State Farm summary judgment. This court affirmed, and the supreme court denied review. *Houg v. State Farm Fire & Cas. Co.*, 481 N.W.2d 393 (Minn.App.1992), *pet. for rev. denied* (Minn. May 15, 1992). As to Bethel, the district court decided State Farm had a duty to defend, but did not address whether State Farm had a duty to indemnify.

M.C. settled her claims against Bethel and Houg for $200,000 under a *Miller–Shugart* agreement. *See Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982). M.C. now wants State Farm to indemnify Bethel, and the district court found there is coverage under the business liability portion of the policy for M.C.'s claims against Bethel. The trial court found the exclusions did not apply to M.C.'s claims of respondeat superior, negligent hiring, and negligent supervision. The trial court granted M.C. summary judgment, finding State Farm has to indemnify Bethel for its settlement with M.C.

## ISSUE

Did the district court err by holding State Farm's business liability insurance policy required State Farm to indemnify Bethel Lutheran Church?

## ANALYSIS

Upon review of summary judgment, an appellate court must determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The facts must be looked at in the light most favorable to the party against whom summary judgment was granted. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

Interpretation of an insurance policy is a question of law which this court reviews de novo. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978); *State Fund Mut. Ins. Co. v. Enebo*, 458 N.W.2d 161, 162 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 20, 1990). The interpretation is made as applied to the facts presented. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372,

376 (Minn.1992); *National City Bank v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 175 (Minn.1989).

Previously, the district court decided the complaint alleged a sufficient basis to require State Farm to defend Bethel Lutheran. State Farm reserved the right to contest coverage. *See Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825–26 (Minn.1980). Because of the *Miller–Shugart* agreement in the underlying action, and because respondent prevailed on a summary judgment motion, there are no findings of fact in this case. Thus, we look at the evidence in the underlying action to resolve the issue of indemnification. *See Milbank Ins. Co. v. B.L.G.*, 484 N.W.2d 52, 56 (Minn.App. 1992), *pet. for rev. denied* (Minn. July 16, 1992). We note that the attorneys for both State Farm and M.C. did excellent work isolating the key provisions of the policy and framing the legal issues.

First of all, there is coverage under State Farm's policy for bodily injury caused by an occurrence that is not excluded. State Farm argues that M.C.'s claim is excluded by the policy and alternatively, that even if there is coverage, M.C. has not provided a sufficient showing of bodily injury to trigger coverage. We need not resolve the issue of whether there was enough of a bodily injury to trigger coverage as we find that under both the main policy, and the optional clergy liability coverage, specific exclusions apply, and State Farm has no obligation to indemnify Bethel.

The district court reasoned that M.C.'s claimed injuries were not caused "by rendering or failing to render professional services," but by Houg's sexual conduct. The court then concluded Houg's conduct was not excluded by the professional services exclusion in Coverage L. Professional services are defined as services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 984 (3d Cir.1988). The district court found that M.C.'s claims of respondeat superior, negligent employment, and negligent supervision against Bethel did not involve professional services. We disagree.

The business liability portion of the policy excludes coverage for the "rendering of or failure to render any professional service." M.C.'s claims arise out of Houg's counseling of M.C. M.C.'s own detailed complaint and allegations *focus on Houg's sexual conduct during the counseling sessions* that M.C. sought. Her claims can only be described as Houg either rendering improper professional services to her, or failing to render proper professional services to her. M.C. does not claim that her relationship with Houg was removed from the church setting, but to the contrary, insists (in order to hold in Bethel as a defendant) that her claimed harm arose out of tainted professional services rendered by someone that Bethel hired, controlled, and should have supervised.

■ Thus, without the optional clergy liability coverage, Bethel would clearly be prevented from indemnification by the exclusion in Coverage L. It appears that precisely for the reason that Bethel wanted professional liability coverage for their clergy, and knew it was excluded, that Bethel bought the optional coverage. *But,* the optional clergy professional service policy contains a succinct exclusion for "liability resulting from any actual or alleged conduct of a sexual nature." M.C.'s detailed complaint and her version of the facts brings the alleged wrong squarely within the meaning of this policy exclusion, and therefore squarely out of State Farm's obligation to indemnify.

In short, M.C.'s claims against Bethel for respondeat superior, negligent employment, and negligent supervision arise directly out of the alleged sexual conduct of Houg, Bethel's employee. There is no coverage.

To fit the facts under coverage for insurance purposes, M.C. and Bethel somehow attempt to separate what Houg is alleged to have done during counseling from the counseling itself. It cannot be done. We agree with this court's statement in an earlier opinion involving an aspect of this case:

> any alleged negligence in Houg's counseling centers on his entering into a sexual relationship with M.C. Any negligent counseling is so intertwined with Houg's

sexual exploitation of a psychologically dependent person as to be inseparable. *Houg,* 481 N.W.2d at 397.

The entire issue of policy exclusion centers on Houg's sexual conduct during his counseling of M.C. The earlier case could not untwine and separate them, and we cannot.

We reverse and remand for entry of summary judgment in favor of State Farm.

## DECISION

M.C.'s claims for respondeat superior, negligent employment, and negligent supervision against Bethel are inseparable from her claims against Houg for sexual contact during counseling sessions. State Farm's coverage does not extend to professional services. State Farm's optional clergy professional services coverage does not extend to allegations arising out of sexual conduct.

**Reversed and remanded.**